# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **BRISTOW FIRST ASSEMBLY OF GOD,** | ) |
| **MARK S. EVANS, CHRISTINA J. EVANS, and** | ) |
| **Mark Evans, as father and next friend of** | ) |
| **CHRISTIAN J. EVANS, and BROOKLYN** | ) |
| **K. EVANS,** | ) |
| Plaintiffs, | ) |
| v. | ) Case No. 15-cv-523-TCK-FHM |
| | ) |
| **BP p.l.c.**; **MARATHON OIL CORPORATION**; | ) |
| **MARATHON PETROLEUM CORPORATION;** | ) |
| **KINDER MORGAN, INC.**; | ) |
| **WENDELL SANDLIN; BOLIN OIL** | ) |
| **COMPANY**, a Partnership, comprised of | ) |
| **D.H. BOLIN, D.P. BOLIN, R.L. BOWLIN** | ) |
| and **C.W. BOLIN; C.W. STRADLEY;** | ) |
| **BILLY JOE BENNETT** and **PEGGY L.** | ) |
| **BENNETT; CHICKASHA BANK OF** | ) |
| **CHICKASHA**; and **C.P. MERCER** and | ) |
| **M. ALINE MERCER**; their subsidiaries, heirs, | ) |
| estates, successors, executors and assigns of the | ) |
| named persons and entities, | ) |
| Defendants. | ) |

## AMENDED COMPLAINT

COME NOW Plaintiffs, BRISTOW FIRST ASSEMPLY OF GOD, BRISTOW

DIVISION (the "Church"), Mark Evans, Christina Evans, and Mark Evans as next friend

of C.J.E. (age 10) and B.K.E. (age 8) (the "Evans Family"), and pursuant to the Court's

Order of September 28, 2016 [Doc. 66],[1] hereby amend the Petition they filed on June 24,

---

[1]     Doc. 66 provided that "Plaintiffs' claims against the following Defendants are
dismissed without prejudice due to fraudulent joinder: Wendell Sandlin; Bolin Oil
Company, a partnership comprised of D.H. Bolin, D.P. Bolin, R.L. Bolin, and C.W.
Bolin; C.W. Stradley; Billy Joe Bennett; Peggy L. Bennett; Liberty National Bank, f/k/a
Chickasha Bank of Chickasha; C.P. Mercer; and M. Aline Mercer." However, Plaintiffs
will make allegations in this Amended Complaint against the dismissed Defendants and

2015 in the District Court of Creek County, Bristow Division, State of Oklahoma, Case No. BCJ-2015-00016. For their claims for relief against Defendants, BP p.l.c. ("BP"), MARATHON OIL CORPORATION and MARATHON PETROLEUM CORPORATION (collectively "Marathon"), KINDER MORGAN, INC. ("Kinder Morgan"), and WENDELL SANDLIN; BOLIN OIL COMPANY, a Partnership, comprised of D.H. BOLIN, D.P. BOLIN, R.L. BOLIN and C.W. BOLIN; C.W. STRADLEY; BILLY JOE BENNETT and PEGGY L. BENNETT; CHICKASHA BANK OF CHICKASHA; and C.P. MERCER and M. ALINE MERCER, their heirs, estates, successors, executors and assigns (collectively "All Defendants"), Plaintiffs allege and state as follows:

1.     Plaintiff, Bristow First Assembly of God (the "Church"), is a nonprofit organization, organized and existing under the laws of the State of Oklahoma, with its principal place of activity in Bristow, Oklahoma. The Church owns the following lands in Creek County, Oklahoma, and has used that land for church purposes:

> A part of the Northwest Quarter of the Northwest Quarter (NW/4 NW/4) lying North and West of the right of way of the St. Louis and San Francisco Railway Company, containing seven and one-half (7½) acres, in Section 29, Township 16 North, Range 9 East, LESS AND EXCEPT approximately one-half (1/2) acre thereof conveyed by deed dated February 27, 1917, recorded April 6, 1917, in Book 146, Page 347, executed by Continental Refining Company to St. Louis-San Francisco Railway Company, in Creek County, State of Oklahoma, according to the United States Government Survey thereof.

---

will make allegations regarding claims that the Court dismissed, including private nuisance, so as to preserve those claims for review and to avoid any assertion of waiver or abandonment of pleadings.

2.      Plaintiff Mark S. Evans is the Church pastor. Mr. Evans, his wife, Christina Evans, and his children, C.J.E. and B.K.E., lived on the Church property until they were advised by the Department of Environmental Quality ("DEQ") on or after July 3, 2013, that their health and safety could be further jeopardized if they continued living and working there. As of the filing of this Amended Complaint, the Evans Family members remain residents of Creek County, Oklahoma.

3.      Defendant, BP p.l.c., ("BP") is a corporation organized and existing under the laws of the United Kingdom, with its principal place of business in London, England. Its agent in the United States is BP America Inc., with its principal place of business in Houston, Texas. BP is the surviving and controlling entity, through acquisition or merger, of predecessor entities,[2] which owned or operated lands and/or facilities contributing harmful and hazardous contaminants that are now commingled with the pollutants contributed by the "Operational Defendants," as defined below, which said contaminants and pollutants have injured Plaintiffs. As the surviving successor entity, BP has, at all

_____

[2]      The Prairie Oil & Gas Company was an owner and conducted operations on the property adjacent to the Lane property from approximately March of 1927 through June of 1929. Prairie became Sinclair Oil & Gas Company. Sinclair became Atlantic Richfield Company (ARCO). ARCO became BP.

Sinclair Oil & Gas Company was an owner and conducted operations on the property adjacent to the Lane property, the Lee property and the AOG property beginning in approximately 1929. Sinclair became ARCO. ARCO became BP.

Standard Oil Company of Indiana was an owner and conducted operations on and adjacent to the Lane property, the Lee property and the AOG property beginning in approximately November of 1915 going forward. Standard (Stanolind) became Amoco. Amoco became BP.

times through the history of the properties that are the subject of this litigation, exercised exclusive dominion and control over its and its predecessors' assets, actions and liabilities associated with the lands, facilities, and operations relevant hereto.

4.      Defendant Marathon Oil Corporation is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in Houston, Texas. Defendant Marathon Petroleum Corporation is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in Findlay, Ohio. Marathon Oil and Marathon Petroleum are collectively referred to herein as "Marathon." The two Marathon Defendants are a split of their predecessor, Marathon Oil Corporation, and are the surviving and controlling entities, through split, acquisition or merger, of predecessor entities,[3] which owned or operated lands and/or facilities contributing harmful and hazardous contaminants that are now commingled with the pollutants contributed by the "Operational Defendants," as defined below, which said contaminants and pollutants have injured Plaintiffs. As the surviving successor, Marathon has, at all times through the history of the properties that are the subject of this

---

[3]      Marathon Oil Company was an owner and conducted operations on and adjacent to the Lee property and the AOG property from approximately August of 1930 to September of 1936.

Of The Ohio Oil Company was an owner and conducted operations on and adjacent to the Lee property and the AOG property from approximately December of 1927 to August of 1938. The Ohio Oil Company became Marathon.

Transcontinental Oil Company was an owner and conducted operations on and adjacent to the Lee property and the AOG property from approximately December of 1927 through August of 1930. Transcontinental Oil Company became Marathon.

4

litigation, exercised exclusive dominion and control over its and its predecessors' assets, actions and liabilities associated with the lands, facilities, and operations relevant hereto.

5.      Defendant, Kinder Morgan, Inc., is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in Houston, Texas. Kinder Morgan is the surviving and controlling entity, through split, acquisition or merger, of predecessor entities,[4] which owned or operated lands and/or facilities contributing harmful and hazardous contaminants that are now commingled with the pollutants contributed by the "Operational Defendants," as defined below, which said contaminants and pollutants have injured Plaintiffs. As the surviving successor entity, Kinder Morgan has, at all times through the history of the properties that are the subject of this litigation, exercised exclusive dominion and control over its and its predecessors' assets, actions and liabilities associated with the lands, facilities, and operations relevant hereto.

6.      Defendants BP, Marathon, and Kinder Morgan will hereinafter be collectively referred to as the "Operational Defendants."

7.      Defendants, Wendell Sandlin; Bolin Oil Company, a Partnership, comprised of D.H. Bolin, D.P. Bolin, R.L. Bolin and C.W. Bolin; C.W. Stradley; Billy Joe Bennett and Peggy L. Bennett; Chickasha Bank of Chickasha; and C.P. Mercer and M. Aline Mercer, their heirs, estates, successors, executors and assigns, are residents of

---

[4]      Wilcox Oil Company was an owner and conducted operations on and adjacent to the Lee property, the Lane property and the AOG property from approximately February of 1921 through June of 1966. Wilcox became Tenneco, which became El Paso, which became Kinder Morgan.

the State of Oklahoma and prior interest owners and predecessors of title to the Church land described in ¶1 of this Amended Complaint.

8.     Operational Defendants are former operators of an oil refinery and tank farm covering the Church property and lands. Operational Defendants abandoned the lands and/or facilities without assuring their operations had not and would not affect the environment or the persons and property in the surrounding area. Operational Defendants covered up and buried refinery products and chemicals without any notice to Plaintiffs, their predecessors in title or State of Oklahoma regulatory authorities. Operational Defendants acted intentionally and with malice towards the public and persons within the area surrounding the operations, and they engaged in conduct life-threatening to humans, including the individual Plaintiffs herein and others in the area. Each of the Operational Defendants have sought to avoid liability for their wrongdoing by engaging in a corporate shell-game, whereby they have formed straw corporations, transferred assets, attempted to transfer away their obligations and liabilities, attempted to hide and deny their involvement and liability for the wrongdoing in causing pollution to the subject lands and injury to Plaintiffs and others.

9.     All Defendants have and had duties to Plaintiffs by virtue of their position as owners of the land and/or as owners/operators of the refinery and tank farm and under the police powers of the State of Oklahoma: (a) to refrain from placing their interests above those of Plaintiffs; (b) to disclose all information to Plaintiffs which would have a material impact upon Plaintiffs' interests; (c) to protect the surface estate from any damage by refinery operations; (d) to refrain from unlawful acts; (e) to not pollute; (f) to

warn Plaintiffs of any risk of harm or danger to persons or property caused by refinery operations; (g) to immediately remove any condition caused by such operations which is dangerous, harmful or damaging to persons or property; (h) to not profit to the detriment of Plaintiffs' interests (including the decrease of expenses by failing to properly conduct operations); and (i) to comply with the statutory and common law of the United States of America and the State of Oklahoma.

10.     Operational Defendants were and are under a duty to prevent the contamination, injury, waste and destruction of the Church's property, and/or damages to Plaintiffs by conducting operations so as to prevent such occurrences. Operational Defendants and any other Defendant with actual knowledge of the harmful/hazardous materials released by the Operational Defendants and the harm that those materials were causing have/had a further duty to warn Plaintiffs of any risk of harm or danger to persons or property caused by Operational Defendants' operations, to abate the dangerous conditions and continuing nuisances which they have created, to maintain their properties so as to prevent further damage, to prevent harmful materials from escaping the property onto the property of the Church or others, and to remove any such material from the Church property or the property of others. Defendants other than the Operational Defendants, as subsequent purchasers, owners, occupiers, mortgagees, and sellers of the Church properties, are liable for the damages and other relief sought by Plaintiffs.

11.     Water usage on the Church property is provided by springs producing from groundwater aquifers and recharge areas, as well as from ponds, and streams. Upon information and belief, at all times prior to the operations conducted by Operational

7

Defendants, the water in, under and flowing across Church land was potable, well-suited for human and animal consumption, well-suited for irrigation and well-suited for any future development on said land. Accordingly, the presence of this fresh water enhanced the value of the Church's real property.

12.     While acting as operators of the refinery on the Church property and thereafter, Operational Defendants caused and/or allowed oil refinery products and other chemicals to be maintained in such a way as to cause severe pollution and contamination to the surface and subsurface soil and water on the Church land, as well as on adjoining lands, and have created a condition dangerous to the health and safety of Plaintiffs, the Church staff and parishioners and others. Specifically, Operational Defendants knew or should have known that deleterious substances from the refinery and tank farm(s) were flowing on, over, across, and through the soils and aquifers on Church lands and adjoining lands, and causing pollution and a high risk of further pollution to the Church property and other adjoining properties.

13.     Despite this knowledge, Operational Defendants: (a) allowed deleterious substances to flow upon the surface and underground and to seep into the subsurface of Church land and adjoining lands by operating the refinery and tank farm(s), by failing to remove deleterious substances, by operating leaking above ground and underground pipelines and tanks for the handling of deleterious substances, by disposing of pollutants onto the surface and into creeks and ponds, by improperly maintaining and operating the refinery, by failing to clean up deleterious substance spills that have occurred from their various facilities, and by causing and permitting severe contamination of the land; and (b)

concealed and failed to disclose such conditions and events to Plaintiffs and their predecessors and failed to warn Plaintiffs and their predecessors of the danger to groundwater, livestock, persons and property arising therefrom. These nuisances arose from the unlawful acts and omissions of duty by the Operational Defendants, whereby they conducted their operations in a manner that polluted the lands and waters of the State of Oklahoma, including the Church property, and endangered the comfort, repose, health and/or safety of Plaintiffs and others or annoyed and injured them, including rendering Plaintiffs insecure in life and the use of property. The Non-operational Defendants, as successor owners of the property, neglected to abate the continuing nuisance created by the Operational Defendants, and are therefore liable in the same manner as the one(s) who first created it, pursuant to 50 Okla. Stat. §5 and common law.

14.    The actions of Operational Defendants have created a health hazard to Plaintiffs and the Church parishioners and staff.

15.    The amount sought as damages is in excess of the amount required for diversity jurisdiction pursuant to Section 1332 of Title 28 of the United States Code; however, diversity jurisdiction does not exist in this case because of incomplete diversity between the parties.[5]

---

[5]    Doc. 66 provided that "Plaintiffs' claims against the following Defendants are dismissed without prejudice due to fraudulent joinder: Wendell Sandlin; Bolin Oil Company, a partnership comprised of D.H. Bolin, D.P. Bolin, R.L. Bolin, and C.W. Bolin; C.W. Stradley; Billy Joe Bennett; Peggy L. Bennett; Liberty National Bank, f/k/a Chickasha Bank of Chickasha; C.P. Mercer; and M. Aline Mercer." However, Plaintiffs will make allegations in this Amended Complaint against the dismissed Defendants and will make allegations regarding claims that the Court dismissed, including private

## FIRST CLAIM FOR RELIEF
### (NEGLIGENCE)

16.     Operational Defendants negligently performed their operations with respect to the refinery and facilities, as aforementioned and in other particulars known by Operational Defendants and as yet unknown to Plaintiffs, and thereby allowed deleterious substances to pollute the Church land and waters. Operational Defendants are under a duty to perform operations so as not to cause pollution. Operational Defendants are also under a duty to not discard or abandon equipment, trash and debris on or under the land. Defendants are also under a duty to clean up the pollution, abandoned equipment, debris, trash and other harmful materials on or under the land, caused by Operational Defendants, which were latent and their impact unknown to Plaintiffs until less than two years prior to the filing of the Petition in Creek County, Oklahoma, and all of which have constituted a continuing nuisance on Church property and on adjacent lands. Defendants have breached their duties, and Plaintiffs have been injured as a result thereof.

17.     Operational Defendants acted in gross disregard for the rights of Plaintiffs in conducting their operations and improperly maintaining harmful and hazardous conditions on their lands, which have infiltrated into and/or migrated onto the Church land and the land of others, including actions and inactions which were in violation of state statutes and the rules and regulations of state regulatory bodies designed to protect the subject private lands as well as the public welfare. The actions of Operational Defendants as alleged herein indicate the absence of even slight care on the part of

---

nuisance, so as to preserve those claims for review and to avoid any assertion of waiver or abandonment of pleadings.

10

Operational Defendants to perform their duties to Plaintiffs and thereby constitute gross negligence on the part of Operational Defendants.

18.     As a direct result of Operational Defendants' gross negligence and reckless disregard for the rights of Plaintiffs, Plaintiffs are entitled to punitive damages to punish Operational Defendants for their actions and to deter others similarly situated from acting in a like manner.

## SECOND CLAIM FOR RELIEF
## (NEGLIGENCE PER SE)

19.     Operational Defendants' actions, as described above and in other particulars known by Operational Defendants and as yet unknown to Plaintiffs, are direct violations of state and federal statutes, rules and regulations, constitute negligence per se and thereby fix liability on said Operational Defendants. The statutes that Plaintiffs have identified, at the time of the filing of this Amended Complaint, are:

(i)      15 Okla. Stat. §§ 57-60 (Fraud);

(ii)     27A Okla. Stat. §§2-1-102, 2-6-105, §§2-3-501 through 506 (Oklahoma Environmental Quality Code);

(iii)    27A Okla. Stat. §2-5-101 *et seq.*, (Oklahoma Clean Air Act);

(iv)     27A Okla. Stat. §2-6-101 *et seq.*, (Oklahoma Water Quality Act);

(v)      29 Okla. Stat. §7-401 (Wildlife Conservation Code);

(vi)     50 Okla. Stat. §§1-3, 5-8, 10, 13 (Nuisances);

(vii)    52 Okla. Stat. §139 (Agency Jurisdiction of DEQ over pollution and environmental quality standards involving refining and storage);

(viii)   76 Okla. Stat. §§1-4 (Rights of Others/Deceit);

(ix)   OK ADC 35:45-1-1 and 1-4 (Water Quality Standards Implementation Plan);

(x)   OK ADC 785:45-5-10 and 5-12 and 5-16 (Oklahoma Water Quality Standards);

(xi)   33 U.S.C.A. §§1252, 1311, 1321 (Clean Water Act)

(xii)   42 U.S.C.A. §9601 *et seq.*, (CERCLA).

The instrumentality causing Plaintiffs' injuries was under the exclusive control of Operational Defendants; the pollution of soils and waters on Church property and adjoining properties ordinarily would not occur in the operation of refineries or tank farms absent some negligence on the part of the operators, despite the fact that pollution can occur even when due care has been fully exercised in the operation of the refinery and tank farm facilities; Operational Defendants have superior knowledge of the facts concerning the cause of Plaintiffs' injuries; and Plaintiffs, therefore, specifically plead the doctrine of *res ipsa loquitur* as fixing the liability of Operational Defendants for negligence in the operation of the refineries and the consequent damages to Plaintiffs.

### THIRD CLAIM FOR RELIEF
### (PUBLIC NUISANCE)

20.   Because Operational Defendants' operations have polluted the waters of the State of Oklahoma, the pollution is, under 27A Okla. Stat. §2-6-105(A) and other law, a public nuisance. All Oklahomans have an interest in conserving the waters of the state and protecting, maintaining and improving the quality of waters of Oklahoma for public water supplies, for the propagation of wildlife, fish and aquatic life and for domestic, agricultural, industrial, recreational and other legitimate beneficial uses as described in

27A Okla. Stat. §2-6-102. Thus, pollution of the waters of the State of Oklahoma injures the entire population of the State of Oklahoma. Therefore, this pollution of the waters of the state affects at the same time a considerable number of people. The extent of the annoyance or damage inflicted upon each individual is unequal. Plaintiffs are specifically injured by the pollution because they own the land and water that has been polluted and/or were exposed to polluted land and water. The pollution caused by Operational Defendants also affects adjoining property owners and tenants. The nuisance created and continued by Operational Defendants is a public nuisance.

## FOURTH CLAIM FOR RELIEF
## (PRIVATE NUISANCE) [6]

21.    The pollution caused to Church property and adjoining properties is, alternatively, a continuing private nuisance under 50 Okla. Stat. §3. Plaintiffs and the Church parishioners and staff members have been harmed, annoyed and inconvenienced by the nuisance created by Operational Defendants. The continuing nuisance created, hidden and maintained by Operational Defendants has caused both permanent and temporary damage to Plaintiffs, Church property and the Church's parishioners and staff.

---

[6]    Doc. 66 provided that "Plaintiffs' private nuisance claim is dismissed." However, Plaintiffs will make allegations in this Amended Complaint regarding claims that the Court dismissed, including private nuisance, so as to preserve those claims for review and to avoid any assertion of waiver or abandonment of pleadings. Plaintiffs recognize, however, that 50 Okla. Stat. §3 provides that a private nuisance is every nuisance not included in the definition of public nuisance, and if the pollution is determined to be a public nuisance, by definition, a claim for private nuisance would not be available.

## FIFTH CLAIM FOR RELIEF
### (UNJUST ENRICHMENT)

22.     Based on information and belief, Operational Defendants have saved money in failing to prevent pollution, remediate pollution and prevent its spread and adverse effects, all to the detriment of Plaintiffs. Operational Defendants are under an obligation to follow rules and laws that require them to prevent pollution. Operational Defendants have breached their duty to Plaintiffs and, as a result thereof, have been unjustly enriched. Plaintiffs are entitled to recover the money Operational Defendants have saved by not complying with the law and by not protecting the environment.

## SIXTH CLAIM FOR RELIEF
### (STRICT LIABILITY)

23.     Operational Defendants are strictly liable to Plaintiffs for all damages caused by Operational Defendants' actions and inactions, which were in violation of Oklahoma statutes and/or the rules and regulations of Oklahoma regulatory bodies or in the operation of non-exempt hazardous activities. The substances on the properties are highly dangerous substances, many of which are known carcinogens or cause heavy-metal (lead) toxicity to humans and animals. The substances also have a high risk of harming the water, soils and the structures and other personal property on the land. The likelihood that harm would result from the Operational Defendants' activities was great, and that harm did, in fact, occur and created the nation's latest Superfund site. The exercise of reasonable care in the operation of the facilities may reduce, but cannot

eliminate, the risk of harm.[7] Refining and related activities such as those conducted by the Operational Defendants in this case is not a matter of common usage in Oklahoma, as is evident from the fact that only approximately four (4) refineries are currently operated in this state and only approximately 140 refineries are currently operated in the entire United States (with many states having no refineries). The refining and associated tank storage facilities were located in an inappropriate position in an environmentally-sensitive area, where the activities caused pollution to flow downhill, downstream and down gradient, which allowed contamination of a much larger area that would otherwise have been affected. The danger of the pollution and its impact on life and property greatly outweighed any value to the community where the facilities were located.

## SEVENTH CLAIM FOR RELIEF
### (FRAUD/DECEIT)

24.     Operational Defendants operated the refinery and tank facilities in a manner that resulted in unlawful pollution and contamination of the operated properties and adjacent properties, including Church property. The unlawful operations were conducted knowingly and without regard for the consequences to the environment or persons who would be harmed, including Plaintiffs, property owners, land occupiers, guests and

---

[7]     The American Petroleum Institute (API) conducted an analysis of U.S. oil spillage and determined that, in the decade between 1988 to 1997, averaged annual refinery oil spillage was 15,015 barrels, and in the decade 1998 to 2007, that annual average was 12,136 barrels, reflecting a high risk of releases, even in highly-controlled eras, where governmental oversight and modern leak prevention requirements are routinely employed, unlike in the days of operation of the refineries and associated storage operations in Bristow, Oklahoma, during the first half of the twentieth century.
http://www.api.org/oil-and-natural-gas/environment/clean-water/oil-spill-prevention-and-response/%7E/media/93371EDFB94C4B4D9C6BBC766F0C4A40.ashx

others. Operational Defendants misrepresented their activities as being lawful and in compliance with laws, rules and regulations, knowing that the activities were unlawful and violated laws, rules and regulations and were harmful to the environment and to persons and property that would come in contact with the contamination and pollution.

25.     During the times they operated and/or owned the facilities described above, and thereafter (with the continuing nuisance that they created, that existed, and that continues to exist), Operational Defendants had a duty of full disclosure of the pollution they had created on the property. Plaintiffs do not know what, if any, affirmative representations were made by the Operational Defendants with respect to the contamination they created, other than those described below; however, the Operational Defendants intentionally withheld vital information, failed to fully and adequately disclose the existence, extent, danger, risk and pervasiveness of the pollution and contamination of the property, covered up and concealed the pollution and contamination and their knowledge of the dangerous conditions, and conveyed the property to the Church's predecessors without full disclosure, knowing the polluted, contaminated and dangerous condition of the property and actively concealing that information, reasonably expecting that their purchasers, future purchasers and other persons would rely upon the deception and fraud of the Operational Defendants and be damaged in that reliance. By concealing and failing to disclose the true information about the condition of the property and about the pollution which existed thereunder, the Operational Defendants committed actual fraud under 15 Okla. Stat. §58 through "the suppression of that which is true by one having knowledge or belief of the fact" and "other act[s] fitted to deceive." By

16

intentionally breaching their duty to fully disclose, the Operational Defendants committed constructive fraud under 15 Okla. Stat. §59 through gain[ing] an advance to the person in fault, or any one claiming under him, by misleading another to his prejudice or to the prejudice of any one claiming under him." By intentionally breaching their duty "to abstain from injuring the person or property of another or infringing upon any of his rights," the Operational Defendants committed deceit under 76 Okla. Stat. §§1-4. On February 3, 2012, Kinder Morgan, acting through El Paso Corporation (prior to their merger) sent a letter to the Oklahoma Department of Environmental Quality (ODEQ), admitting the chain of ownership of Wilcox Oil Company, but contending that Kinder Morgan's/El Paso's liability had been unilaterally extinguished. That letter was written by Kinder Morgan/ El Paso Corporation on El Paso Corporation letterhead (at the address that currently houses Kinder Morgan's headquarters) and was signed by a lawyer employed by Kinder Morgan/ El Paso Corporation as senior counsel, who purported to sign the letter as the trustee for a "liquidating trust." El Paso Corporation was the trustee and completely and wholly owned and controlled all of the assets and completely controlled the attempt to discharge the liabilities associated with the Wilcox refinery, among other liabilities, even though none of the affected parties at the refinery had ever been given notice of the fraudulent activities of the trustee or the claims Kinder Morgan/ El Paso Corporation was seeking to discharge. On September 12, 2014, Marathon Oil sent a letter (signed by a lawyer employed by Marathon Oil Company and listed as "Group Counsel, Law-Regulatory Compliance") to the U.S. Environmental Protection Agency (EPA), denying that Marathon had any information tying it to the property and

denying liability for the pollution, despite Marathon being a prior operator and succeeding to the interests of the Ohio Oil Company and Transcontinental Oil Company, as described above. Furthermore, Marathon has entered into a voluntary clean-up program for the Transcontinental Refinery (a/k/a the Old Ohio Refinery), which is located directly above the AOG church building between the Lorraine/Wilcox Refinery and the Turner Turnpike.

26.     Operational Defendants further entered into complex organizational structuring and restructuring within the corporate families that said Operational Defendants totally controlled and manipulated for their own unlawful purposes, in order to, *inter alia*, hide, conceal, avoid, and misrepresent their liabilities for the pollution and to attempt to discharge their liabilities, while separating and insulating assets and other benefits that would otherwise be subjected to recourse for the liabilities. By way of example, Kinder Morgan, acting under its own name and in its prior existence as Tenneco, Inc., and El Paso Corporation, set up a series of transactional entities to act as "straw" entities to accomplish mergers, acquisitions, divestitures and dissolutions to shift the valuable and beneficial corporate assets to healthy, profitable, core entities, while shifting heavily-burdened assets, obligations and liabilities to the straw entities (which had insufficient value to meet the obligations and liabilities associated with the assets designated for the straw entities). Tenneco attempted to confine the refinery and tank farm assets, obligations and liabilities in straw entities prior to the corporate merger of Tenneco into El Paso (El Paso being the surviving, controlling, merged company, with all Tenneco's assets, obligations and liabilities). El Paso attempted to confine the refinery

and tank farm assets, obligations and liabilities in straw entities prior to the corporate merger of El Paso and Kinder Morgan (Kinder Morgan being the surviving, controlling, merged company, with all El Paso's assets, obligations and liabilities). As part of Kinder Morgan's acquisition and merger of El Paso, Kinder Morgan created corporate structures to further attempt to confine the refinery and tank farm assets, obligations and liabilities in straw entities to avoid the liabilities it inherited as El Paso's survivor in the merger. Kinder Morgan claims that through the years (including during its prior existence as Tenneco and El Paso) its manipulation of corporate obligations and liabilities associated with the refinery and tank farm have been fully discharged through the dissolution of a straw Trust created on behalf of a straw El Paso entity, all controlled and represented by El Paso Corporation and its General Counsel, all being the direct actions of Kinder Morgan (then El Paso).

27.   All of these actions and inactions by the Operational Defendants were willful, wanton, malicious, oppressive, deceitful, misleading, grossly negligent and constitute actual fraud, constructive fraud, misrepresentation, and/or deceit under Oklahoma law.

### EIGHTH CLAIM FOR RELIEF
### (RESTITUTION)

28.   The pollution caused by Operational Defendants' actions and inactions has created potential liabilities for the Plaintiffs, as a successor owner of the polluted property and Church family, respectively, which greatly exceed the value of the property in an unpolluted condition, and thus has created a large negative net value for the polluted

property. The Church seeks recovery of the difference in the value of the property in an unpolluted condition and the negative value of the property in its polluted condition.

29.    Plaintiffs also seek recovery of damages for personal harm, personal annoyance and inconvenience, endangerment of comfort, health, tranquility and safety of its parishioners and staff, and for Plaintiffs having been rendered insecure in the use of Church property.

**NINTH CLAIM FOR RELIEF**
**(DECLARATORY JUDGMENT/INDEMNIFICATION/CONTRIBUTION)**

30.    All Defendants are predecessors in title to the Church lands and conveyed the lands to the Church and/or were operators of the facilities that caused pollution on the lands. To the extent Plaintiffs are hereafter made subject to claims for damages, injunctive relief, remediation or other relief resulting from pollution on the land or emanating therefrom, Plaintiffs seek an order declaring the rights of the parties and requiring All Defendants to indemnify Plaintiffs and hold them harmless from any such claims, damages, injunctions or any such other relief.

**TENTH CLAIM FOR RELIEF**
**(INJUNCTION)**

31.    Plaintiffs seek a mandatory injunction. Plaintiffs are entitled to have the land reclaimed and a full cleanup conducted upon the property so that the soil and water are free from pollution and the areas of erosion are restored to their original condition or a condition as close as possible to original through the use of best practices. Plaintiffs are entitled to have Operational Defendants remove from Church property all deleterious substances as well as all pipeline, tanks, structures and facilities, and restore the land to

its natural condition free of all pollution, erosion, abandoned oilfield equipment and oilfield debris. Plaintiffs allege that some permanent damage will remain after the cleanup of the temporary damage has been completed. The amount of permanent damages will be proven at the time of trial. Plaintiffs seek an Order from this Court requiring Operational Defendants to spend the money necessary to clean up and abate the nuisance caused by their operations.

32.   Operational Defendants have a duty to fully test and investigate to determine the nature, extent and source of pollution, to develop a cleanup plan for such pollution, and to fully clean up such pollution. Operational Defendants have breached that duty. Plaintiffs have and will incur costs for investigating, testing and cleanup and are entitled to be reimbursed for such costs. Plaintiffs seek recovery of the expense they incur to test and investigate the nature, extent and scope of the pollution and develop a cleanup plan. Plaintiffs further seek damages in an amount sufficient to restore the property to its original unpolluted condition.

**ELEVENTH CLAIM FOR RELIEF**
**(FEES AND COSTS)**

33.   Plaintiffs are incurring attorney's fees and costs because of Operational Defendants' negligent and/or willful injury to Church property. Plaintiffs seek recovery of such attorney's fees and costs.

**WHEREFORE**, premises considered, Plaintiffs pray judgment against Operational Defendants for an abatement order/injunction as described above, and for actual and punitive damages to be proven at trial on the alternative theories described and

any other theory supported by the facts and allowed by law or equity. In addition, Plaintiffs request the award of attorney's fees, interest, the cost of this litigation and such other just and equitable relief as the Court may deem proper.

Respectfully submitted,

/s/ Micheal Darrah
Micheal Darrah, OBA No. 2162
Edd Pritchett, OBA No. 16118
Durbin, Larimore & Bialick
920 North Harvey
Oklahoma City, OK 73102
Telephone: (405) 235-9584
Facsimile: (405) 235-0551
dlb@dlb.net

Allan DeVore, OBA No. 2328
Jandra Jorgenson, OBA No. 16610
DeVore & Jorgenson, PLC
5709 N.W. 132nd Street
Oklahoma City, OK 73142
Telephone: (405) 603-8585
Facsimile: (877) 636-8113
d-j@devorejorgenson.com

Michael J. Blaschke, OBA No. 868
MICHAEL J. BLASCHKE, P.C.
3037 N.W. 63rd Street, Suite 205
Oklahoma City, OK 73116
(405) 562-7771 Telephone
(405) 285-9350 Facsimile
mblaschke@thelawgroupokc.com

**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

I hereby certify that on this 11th day of October, 2016, I electronically transmitted a copy of the attached document to the Clerk of Court using the ECF System for filing and transmittal of Notice to the Court of Matters Under Advisement for More Than Ninety (90) Days. Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF recipients:

Kenneth Blakley ken.blakley@mcafeetaft.com
(Attorney for Defendant Marathon)

A. Scott McDaniel smcdaniel@ok-counsel.com
(Attorney for Defendant BP)

Miranda Calhoun mcalhoun@ok-counsel.com
(Attorney for Defendant BP)

Stacy L. Acord sacord@ok-counsel.com
(Attorney for Defendant BP)

Melissa East meast@ok-counsel.com
(Attorney for Defendant BP)

Amy Fischer amyfischer@oklahomacounsel.com
(Attorney for Defendant Kinder Morgan)

Bonnie Barnett bonnie.barnett@dbr.com
(Attorney for Defendant Kinder Morgan)

Larry D. Ottaway larryottaway@oklahomacounsel.com
(Attorney for Defendant Kinder Morgan)

Patricia Bausinger leigh.bausinger@dbr.com
(Attorney for Defendant Kinder Morgan)

Ross Lewin ross.lewin@dbr.com
(Attorney for Defendant Kinder Morgan)

John Randolph, Jr. jrandolph@praywalker.com
(Attorney for Defendant RL Bowlin)

Randall Vaughan rvaughan@praywalker.com
(Attorney for Defendant RL Bowlin)

Robert Mitchener, III rmitchener@praywalker.com
(Attorney for Defendant RL Bowlin)

/s/ Micheal Darrah

23