## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

BRISTOW FIRST ASSEMBLY OF GOD;     )
MARK S. EVANS and CHRISTINA J. EVANS, )
individually, and as parents and next of kin to   )
C.J.E. and B.K.E., minor children;     )
     )
     **Plaintiffs,**     )
     )
v.     )     **Case No. 15-CV-523-TCK-FHM**
     )
BP p.l.c.;     )
MARATHON OIL CORPORATION;     )
MARATHON PETROLEUM     )
CORPORATION; and     )
KINDER MORGAN, INC.,     )
     )
     **Defendants.**     )

## OPINION AND ORDER

Before the Court are (1) Defendant BP p.l.c.'s Motion to Reconsider (Doc. 76); (2)

Defendant BP p.l.c.'s Motion to Strike Portions of the Amended Complaint (Doc. 78); (3) Defendant

Kinder Morgan, Inc.'s Motion to Strike Portions of the Amended Complaint (Doc. 80); (4)

Defendant BP p.l.c.'s Partial Motion to Dismiss (Doc. 79); (5) Defendant Kinder Morgan, Inc.'s

Partial Motion to Dismiss (Doc. 81); and (6) Defendants Marathon Oil Corporation and Marathon

Petroleum Corporation's Partial Motion to Dismiss (Doc. 83).

### I.    Background

Plaintiff Bristow First Assembly of God (the "Church"), an Oklahoma nonprofit

organization, owns certain real property in Creek County, Oklahoma (the "Church property").  The

Church's pastor, Plaintiff Mark S. Evans, his wife Christina J. Evans, and their children, C.J.E. and

B.K.E., lived on the Church property until they allegedly were advised by the Oklahoma Department

of Environmental Quality around July 3, 2013, that continuing to do so could jeopardize their health

and safety.  On June 24, 2015, Plaintiffs filed a Petition in the District Court of Creek County, Oklahoma, alleging claims of negligence, nuisance, unjust enrichment, strict liability, and fraud, among others, against Defendants BP, p.l.c. ("BP"), Marathon Oil Corporation, Marathon Petroleum Corporation, and Kinder Morgan, Inc. (collectively, "Operational Defendants") and several individuals and companies who allegedly were prior interest owners and predecessors of title to the Church property (collectively, "Non-Operational Defendants").  Plaintiffs allege the Operational Defendants formerly operated  an oil refinery and "tank farm" on the Church property and that they abandoned such refinery "without assuring their operations had not and would not affect the environment or the persons and property" and "covered up and buried refinery products and chemicals" without notice to Plaintiffs.  (Am. Compl. ¶ 8.)  On September 14, 2015, Defendant Kinder Morgan, Inc. ("Kinder Morgan") removed the case to this Court.

On September 28, 2016, the Court entered an Opinion and Order (Doc. 66) ("9/28/16 Opinion and Order") (1) denying Plaintiffs' Motion to Remand and dismissing the Non-Operational Defendants as fraudulently joined; (2) denying BP's Motion to Dismiss for insufficient service of process pursuant to Federal Rule of Civil Procedure Rule 12(b)(5) ("Rule 12(b)(5)"); and (3) granting BP's Motion to Dismiss pursuant to Federal Rule of Civil Procedure Rule 12(b)(6) ("Rule 12(b)(6)") with respect to Plaintiffs' negligence per se, private nuisance, strict liability, and fraud claims.  The Court's 9/28/16 Opinion and Order granted leave for Plaintiffs to amend their claims for negligence per se, strict liability, and fraud.  On October 12, 2016, Plaintiffs filed an Amended Complaint (Doc. 68).  On October 26, 2016, BP filed a Motion to Reconsider the denial of BP's Motion to Dismiss pursuant to Rule 12(b)(5).  On November 4, 2016, BP filed a Motion to Strike Portions of the Amended Complaint and a Partial Motion to Dismiss.  On November 7, 2016, Kinder

2

Morgan also filed a Motion to Strike Portions of the Amended Complaint and a Partial Motion to Dismiss adopting and supplementing BP's Motion to Dismiss.  On November 7, 2016, Defendants Marathon Oil Corporation and Marathon Petroleum Corporation (collectively, "Marathon Defendants") filed a Partial Motion to Dismiss adopting and supplementing the Motions to Dismiss filed by BP and Kinder Morgan.

## II.    BP's Motion to Reconsider

BP seeks reconsideration of the Court's denial of its motion to dismiss for insufficient service of process under Federal Rule of Civil Procedure 12(b)(5).  Plaintiffs attempted to serve BP America, Inc., which was identified on BP's 2014 Annual Report as its agent in the United States, although process was addressed to "BP America Production Company."  While BP disputed that either BP America, Inc. or BP Production Company was its designated service agent, BP did not identify its service agent in the United States, leaving the Court unable to determine how closely Plaintiffs' attempt came to perfecting service of process on BP.  Given the information before it, the Court found Plaintiffs' service attempt had a reasonable probability of affording BP with notice and therefore was in substantial compliance with the statutory scheme, as permitted under *Graff v. Kelly*, 814 P.2d 489 (Okla. 1991).

In its motion for reconsideration, BP does not point to any intervening change in the controlling law or new evidence previously unavailable to warrant reconsideration. Rather, BP now informs the Court that it does not have a service agent in the United States and contends that it must

be served abroad in compliance with the Hague Convention.[1]  BP concedes that its 2014 Annual Report designated BP America, Inc., as its agent for inquiries regarding the report but argues that BP America, Inc., is at most its "general agent," which BP contends is insufficient to be considered an agent for service of process.

BP relies primarily on *Hukill v. Okla. Native Am. Domestic Violence Coalition*, 542 F.3d 794 (10th Cir. 2009) and *Graff*, both of which the Court considered and cited in its 9/28/16 Opinion and Order.  BP contends the Court misapprehended the controlling law as set forth in those cases because *Graff* and *Hukill*, as well as *Ferguson Enterprises, Inc. V. H. Webb Enterprises, Inc.*, 13 P.3d 480 (Okla. 2000), stand for the proposition that actual notice of the lawsuit to the defendant is not sufficient to satisfy the Oklahoma statutory scheme.  However, the Court's decision in the 9/28/16 Opinion and Order was not based on BP's having received actual notice of this proceeding.  Rather, the Court found that Plaintiffs' attempted service was in substantial compliance with Oklahoma's statutory scheme, which is sufficient under *Graff* and *Hukill*.  As noted in *Hukill*, "[t]he adopted test requires that under *all the circumstances present in a case* there be a *reasonable probability* the service of process employed apprizes its recipient of the plaintiff's pressed demands and the result attendant to default."  *Hukill*, 542 F.3d at 799 (citing *Vance v. Fed. Nat'l Mortgage Ass'n*, 988 P.2d 1275, 1279-80 (Okla. 1999)) (emphasis in original).

BP cites *Corraro v. Moody International* for its argument that BP must be served abroad.  However, the court in *Corraro* noted that "in lieu of service abroad, *the Due Process Clause of the*

---

[1]  BP incorrectly states that it disclosed in its original motion to dismiss that it does not have a service agent in the United States.  In fact, BP's original motion to dismiss implied that BP has an authorized agent for service of process in the U.S. that Plaintiffs could have served.  (*See* Doc. 26 at 4.)

*Fourteenth Amendment* requires service on a domestic agent that complies with the laws of the forum state." *Corraro v. Moody Int'l*, No. 11-CV-0455-CVE-PJC, 2012 U.S. Dist. LEXIS 103896, at *7 (N.D. Okla. July 26, 2012) (emphasis in original).  BP has not pointed to any other cases warranting a change in the Court's determination that Plaintiffs substantially complied with the statutory scheme.  Therefore, the Court will not vacate its decision denying BP's motion to dismiss for insufficient service of process.

**III.     BP's and Kinder Morgan's Motions to Strike**

BP and Kinder Morgan contend portions of Plaintiffs' Amended Complaint should be stricken.  Specifically, BP and Kinder Morgan argue that (1) the Non-Operational Defendants were improperly named and should be stricken, and (2) Plaintiffs' claims against the Operational Defendants for private nuisance and against all defendants for declaratory judgment/indemnification/contribution should be stricken.

Rule 12(f) of the Federal Rules of Civil Procedure permits "any redundant, immaterial, impertinent or scandalous matters" to be stricken from a pleading.  "Striking a pleading or part of a pleading is a drastic remedy and because a motion to strike may often be made as a dilatory tactic, motions to strike under Rule 12(f) generally are disfavored." *Oilfield Improvements, Inc. v. Coston*, No. 10-CV-577-TCK-TLW, 2012 WL 1752994, at *1 (N.D. Okla. May 15, 2012) (citing *Sai Broken Arrow C, LLC v. Guardian Emergency Vehicles, Inc.,* No. 09-CV-0455-CVE-FHM (N.D. Okla. Jan. 8, 2010) (internal citation omitted)); *see* 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1382 (3d. ed. 2012) (noting that "because federal judges have made it clear . . . that Rule 12(f) motions to strike . . . are not favored, often being considered purely cosmetic or 'time wasters,' there appears to be general judicial agreement, as reflected in the extensive case law

on the subject, that they should be denied unless that the challenged allegations have no possible relation or logical connection to the subject matter of the controversy and may cause some form of significant prejudice to one or more of the parties to the action").

### A.    Re-Joinder of Non-Operational Defendants

The 9/28/16 Opinion and Order dismissed the Non-Operational Defendants because Kinder Morgan had shown "with complete certainty" that Plaintiffs could not recover against the Non-Operational Defendants on (1) their claim of declaratory judgment/indemnity/contribution or (2) their proposed claim of constructive fraud.    With respect to the declaratory judgment/indemnity/contribution claim, Plaintiffs had no possibility of recovery because they could point to no actual dispute or demand from any third party that would potentially expose Plaintiffs to liability.  In the absence of any such underlying dispute, a declaratory judgment or judgment of indemnification or contribution would constitute an impermissible advisory opinion.  Accordingly, the Court found the Non-Operational Defendants were fraudulently joined and dismissed them without prejudice.

In the Amended Complaint, Plaintiffs again named the dismissed Non-Operational Defendants, re-asserting and amending their original claims.  (*See, e.g.*, Am. Compl. ¶¶ 10, 13 (newly alleging that the Non-Operational Defendants are liable as successors in ownership to the Operational Defendants).)  Plaintiffs explained in a footnote to the Amended Complaint that they re-alleged their claims against the Non-Operational Defendants in order to preserve them for review and to avoid any assertion of waiver or abandonment.  (*Id.* at ¶ 15 n.5.)  Plaintiffs apparently interpreted the Court's dismissal as requiring them to re-assert and amend their claims against the Non-Operational Defendants or risk waiving their right to appeal or assert claims against the Non-

6

Operational Defendants. Contrary to Plaintiffs' contention, the "without prejudice" designation did not constitute leave to re-assert the same allegations against the Non-Operational Defendants. Rather, the Court recognized the possibility that if Plaintiffs find themselves subject to liability in a future dispute, Plaintiffs may seek to assert their claim of declaratory judgment/indemnity/contribution against the Non-Operational Defendants and dismissed those defendants without prejudice to any claims that may arise against those defendants in the future.

While improper, the re-joining of the Non-Operational Defendants could have resulted from a misinterpretation of the 9/28/16 Opinion and Order and out of an abundance of caution to ensure Plaintiffs preserved any right to seek review. Accordingly, the Court does not find that it was "impertinent" to have re-joined the Plaintiffs. Nor have BP and Kinder Morgan shown that they are significantly prejudiced by the re-assertion of claims against the Non-Operational Defendants.[2] Nevertheless, the Non-Operational Defendants are not properly joined here for the reasons set forth in the 9/28/16 Opinion and Order. The Non-Operational Defendants were dismissed based on fraudulent joinder, and the re-assertion of claims against them, even if made solely to preserve Plaintiffs' right to seek review of the Court's decision, necessarily destroys complete diversity of citizenship between the parties. The amendment of Plaintiffs' allegations with respect to the Non-Operational Defendants was also improper, particularly after the Court addressed Plaintiffs' proposed addition of a constructive fraud claim against the Non-Operational Defendants "solely to avoid [a request to add such a claim] following issuance of this Opinion and Order." (9/28/16 Op. and Ord., Doc. 66, at 4 n.2.)

---

[2] Plaintiffs argue that BP and Kinder Morgan lack standing to ask the Court to strike Plaintiffs' allegations concerning the Non-Operational Defendants. However, the Court is obligated to consider whether the Non-Operational Defendants are properly named in Plaintiffs' Amended Complaint because it affects the existence of subject matter jurisdiction in this proceeding.

The Non-Operational Defendants (in other words, all named defendants other than the Operational Defendants, as defined herein) have been dismissed from this proceeding and are stricken from the Amended Complaint pursuant to Federal Rule of Civil Procedure Rule 12(f). All allegations against the Non-Operational Defendants are also stricken. All further documents filed by any participant in this proceeding shall reflect the dismissal of the Non-Operational Defendants.

### B.    Private Nuisance Claim

The 9/28/16 Opinion and Order dismissed Plaintiffs' claim for private nuisance without leave to amend. Plaintiffs nevertheless re-stated their private nuisance allegations against the Operational Defendants in the Amended Complaint. Plaintiffs do not contend that the Amended Complaint revives their private nuisance claim; rather, Plaintiffs included the allegations relating to private nuisance in order "to preserve those claims for review and to avoid any assertion of waiver or abandonment of pleadings." (Am. Compl. at 13 n.6.) Plaintiffs' claim for private nuisance will not be stricken because BP and Kinder Morgan have not shown that they are significantly prejudiced by inclusion of this claim in the Amended Complaint. However, Plaintiffs' private nuisance claim remains dismissed and is not revived by its inclusion in the Amended Complaint.

### C.    Declaratory Judgment/Indemnification/Contribution Claim

In the Amended Complaint, Plaintiffs re-assert their claim for declaratory judgment/indemnification/contribution against both the Non-Operational Defendants and Operational Defendants. For the reasons discussed in Part III.A above, it was improper for Plaintiffs to re-assert this claim with respect to the Non-Operational Defendants. In the 9/28/16 Opinion and Order, the Court did not address the private nuisance claim with respect to the Operational Defendants. However, BP and Kinder Morgan have not shown that they are significantly prejudiced by the inclusion of this claim in the Amended Complaint, and therefore Plaintiffs' claim for

8

declaratory judgment/indemnification/contribution will not be stricken with respect to the Operational Defendants.

## IV.   Operational Defendants' Partial Motions to Dismiss

The Operational Defendants seek dismissal of certain claims in the Amended Complaint pursuant to Rule 12(b)(6).[3]  In considering a motion to dismiss under Rule 12(b)(6), a court must determine whether the plaintiff has stated a claim upon which relief may be granted.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "[T]he mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in original).

The Tenth Circuit has interpreted "plausibility," the term used by the Supreme Court in *Twombly*, to "refer to the scope of the allegations in a complaint" rather than to mean "likely to be true." *Robbins v. Okla. ex rel. Okla. Dep't of Human Servs.*, 519 F.3d 1242, 1247 (10th Cir. 2008). Thus, "if [allegations] are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs have not nudged their claims across the line from conceivable to plausible." *Id.* (internal quotations omitted).  "The allegations must be enough that, if assumed to

---

[3]  Kinder Morgan's Partial Motion to Dismiss (Docs. 81-82) adopts and incorporates BP's Partial Motion to Dismiss (Doc. 79) and sets forth additional argument regarding Plaintiffs' negligence per se and fraud claims.  Marathon Defendants' Partial Motion to Dismiss (Doc. 83) adopts and incorporates BP's and Kinder Morgan's motions and sets forth additional argument regarding Plaintiffs' negligence per se, fraud, and personal injury claims.  The Court addresses all three motions to dismiss in this analysis.  Where necessary, the Court limits its discussion of various issues to the relevant defendant.

be true, the plaintiff plausibly (not just speculatively) has a claim for relief." *Id.* "This requirement of plausibility serves not only to weed out claims that do not (in the absence of additional allegations) have a reasonable prospect of success, but also to inform the defendants of the actual grounds of the claim against them." *Id.* at 1248.

A.      **Negligence Per Se**

In its 9/28/16 Opinion and Order, the Court ruled that Plaintiffs failed to state a plausible claim of negligence per se because they failed to identify any specific statutory or other basis underlying such claim. "The negligence per se doctrine is employed to substitute statutory standards for parallel common law, reasonable care duties" in a negligence claim. *Howard v. Zimmer*, 299 P.3d 463, 474 (Okla. 2013). The following elements must be shown in order to establish a negligence per se claim: (1) the claimed injury is of a type intended to be prevented by the statute or regulation; (2) the injured party is a member of the class intended to be protected by the statute or regulation; and (3) the claimed injury was caused by the statutory or regulatory violation. *Id.* at 467. The Court granted Plaintiffs leave to amend to provide greater factual detail regarding their negligence per se claim.

In the Amended Complaint, Plaintiffs include a list of twelve separate statutes or regulatory schemes under Oklahoma and federal law in support of their negligence per se claim. The Operational Defendants argue that Plaintiffs have merely provided a "laundry list" of statutes and regulations that is insufficient to allege negligence per se. The Court agrees with Operational Defendants. Contrary to Plaintiffs' assertion, the 9/28/16 Opinion and Order did not invite Plaintiffs to merely add a list of statutes and broad regulations that Operational Defendants might have violated. Rather, the Court granted Plaintiffs the opportunity to plead additional facts and identify a relevant statute or basis for their negligence per se claim. Plaintiffs' newly added list lacks any

details to support a claim of negligence per se against any particular defendant based on any particular provision, and therefore it fails to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

Most if not all of the statutes and regulations Plaintiffs cited fall into one of two categories: (1) those that do not include a specific standard of conduct applicable to the allegations here, such as the Oklahoma statutes codifying the common law standards for fraud, nuisance, and rights of others/deceit; and (2) those that were not in effect during the time period when Plaintiffs allege the Operational Defendants owned or operated facilities on the Church property.[4]  Further, some of the provisions cited appear to be general in nature, applicable only to state agencies, or not intended to protect a class of individuals that includes Plaintiffs.  *See, e.g.*, Okla. Stat. tit. 52 § 139 (dealing with jurisdiction and authority of certain state agencies); Okla. Admin. Code § 35:45-1-1 and 1-4 (addressing authority and jurisdiction of Oklahoma Department of Agriculture, Food, and Forestry). Plaintiffs' allegations fail to provide enough information to identify when any alleged violation took place or whether the cited statutes and regulations were in place at the time.  Further, they do not allege which specific provision or standard was violated, which Operational Defendant allegedly committed the violation, or how any alleged violation is linked to any of Plaintiffs' alleged injuries.

---

[4]  Discovery in this case is being conducted on a consolidated basis with two other cases, numbered 15-CV-524-TCK-FHM and 15-CV-525-TCK-FHM.   In the Amended Complaint, Plaintiffs identify specific time periods related to various defendants and predecessors of the Operational Defendants and their ownership and/or use of the lands at issue in the three cases. Plaintiffs allege BP and various predecessors owned and conducted operations on the lands at various times beginning in November of 1915, without specifying any end date.  (Am. Compl. ¶ 3 n.2.)  Plaintiffs allege Marathon Oil and various predecessors owned and conducted operations on the Church property between 1927 and 1938.  (*Id.* at ¶ 4 n.3.)  Plaintiffs allege Kinder Morgan and its predecessors owned and conducted operations on the lands between 1921 and 1966.  (*Id.* at ¶ 5 n.4.)

Plaintiffs ignore many of these deficiencies in their response brief and only address a few specific provisions.  However, Plaintiffs still fail to identify any specific violation and ignore the Operational Defendants' contention that most of the provisions were not applicable at the time the Operational Defendants or their predecessors allegedly conducted oil refining and storage operations on the Church property.  Plaintiffs do not dispute that many of the statutes and regulations cited in the Amended Complaint were not enacted until well after the time period when Operational Defendants or their predecessors allegedly owned or conducted operations on the Church property.  Instead, Plaintiffs contend "the harm and damage to Plaintiffs' property has been *ongoing and continuous* and continues today."  (Pls.' Resp. to Operational Defs.' Partial Mots. to Dismiss 10.)  Plaintiffs contend that under the federal Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9601 *et seq.*, the Operational Defendants had a continuing duty to clean up and remediate damage from their operations on the Church property but failed to do so.  However, Plaintiffs have failed to establish that CERCLA sets a standard of conduct on which a negligence per se claim can be based, or allege facts specific to any alleged violation of a provision of CERCLA.[5]  Plaintiffs also have not shown that any of the other statutes cited may be applied retroactively to conduct that took place before their enactment.  Plaintiffs have failed to state any specific plausible claim for negligence per se against any particular Defendant, and such claim is therefore dismissed.

---

[5]  While the Tenth Circuit does not appear to have addressed whether CERCLA sets a standard of care for the purpose of a negligence per se claim, Kinder Morgan cites cases from other circuits holding that it does not.  *See, e.g., Western Greenhouses v. U.S.*, 878 F. Supp. 917, 930 (N.D. Tex. 1995) (noting that "CERCLA and RCRA are strict liability statutes that fail to define a standard of conduct" for the purpose of a negligence per se claim); *Trinity Indus., Inc. v. Greenlease Holding Co.*, 35 F. Supp. 3d 698, 725 (W.D. Pa. 2014) ("Because CERCLA is an environmental statute that is not tailored to protect a particular class of individuals, it does not establish the applicable standard of care for purposes of negligence law.") (internal citations omitted).

B.      **Strict Liability**

The Court dismissed Plaintiffs' strict liability claim in their original Petition because Plaintiffs failed to establish any "ultrahazardous conduct" as required under Oklahoma law. Plaintiffs alleged that the Operational Defendants were strictly liable for abandoning the oil refinery without taking proper precautions and covering up and burying refinery products. Plaintiffs failed to show that "a highly significant risk . . . remains with the activity even when all actors exercise reasonable care," as required to state a claim for strict liability. The Court granted Plaintiffs leave to provide greater factual detail regarding strict liability.

In the Amended Complaint, Plaintiffs re-assert their strict liability claim against the Operational Defendants. Plaintiffs allege that (1) the substances on the Church property are highly dangerous substances, including known carcinogens and toxins; (2) the substances have a high risk of harming the water, soils, and the structures and other personal property on the land; and (3) the likelihood that harm would result from the Operational Defendants' activities was great and harm did, in fact, occur. Plaintiffs further allege that "[t]he exercise of reasonable care in the operation of the facilities may reduce, but cannot eliminate, the risk of harm." (Am. Compl ¶ 23.)

The Operational Defendants contend that because elsewhere in the Amended Complaint Plaintiffs challenge the manner in which BP and others operated on the site, Plaintiffs can only establish a claim of negligence, not strict liability. Plaintiffs contend the operation of the refinery itself constitutes "ultrahazardous activity." The Court finds that Plaintiffs' allegations that the Operational Defendants failed to exercise due care are not mutually exclusive with a claim of strict liability. The Operational Defendants cite several cases from other jurisdictions finding that various activities related to oil or natural gas are not ultrahazardous activities. However, the Operational

Defendants have not cited any cases in Oklahoma courts addressing this issue.[6]  Accordingly, the Court finds dismissal of Plaintiffs' strict liability claim is not warranted.

### C.    Fraud and Constructive Fraud

In its 9/28/16 Opinion and Order, the Court dismissed Plaintiffs' fraud claim against the Operational Defendants because the original Petition grouped all Operational Defendants together and failed to specify the time, place, or contents of any alleged false representations, as required in the Tenth Circuit.  *See Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1236 (10th Cir. 2000).  Under Fed. R. Civ. P. 9(b) ("Rule 9(b)"), "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.  Malice, intent, knowledge, and other conditions of mind of a person may be averred generally."  While Plaintiffs' original allegations failed to satisfy the pleading requirements of Rule 9(b), the Court granted Plaintiffs leave to provide greater factual detail regarding their fraud claim.

Plaintiffs have alleged additional facts in the Amended Complaint, described below, to support their fraud claim and have added a claim of constructive fraud under Okla. Stat. tit. 15 § 59.  To prevail on a claim of constructive fraud, plaintiff must show that:  (1) the defendant owed plaintiff a duty of full disclosure; (2) defendant misstated a fact or failed to disclose a fact to plaintiff; (3) defendant's misstatement or omission was material; (4) plaintiff relied on defendant's material misstatement or omission; and (5) plaintiff suffered damages as a result of defendant's material misstatement or omission.  *Specialty Beverages, LLC v. Pabst Brewing Co.*, 537 F.3d 1165, 1180-81 (10th Cir. 2008).

---

[6]  According to Plaintiffs, Oklahoma courts have yet to address the question of whether oil and gas refinery operations and the associated transportation and storage of substances may be ultrahazardous activities.

Plaintiffs contend their fraud and constructive fraud claims are based on fraudulent omissions, rather than affirmative misrepresentations.  (Pls.' Resp. to Operational Defs.' Partial Mots. to Dismiss 13.)  Plaintiffs point to the Operational Defendants' alleged failure to disclose, misrepresentation, or concealment of information about (1) the lawfulness or unlawfulness of their operations and (2) the pollution and contamination resulting from operations on the Church property. As in their original Petition, Plaintiffs also allege that the Operational Defendants "entered into complex organizational structuring and restructuring within the corporate families . . . in order to . . . hide, conceal, avoid, and misrepresent their liabilities for the pollution and to attempt to discharge their liabilities, while separating and insulating assets and other benefits."  (Am. Compl. ¶ 26.)

In support of their fraud and constructive fraud claims, Plaintiffs have added allegations concerning the time frame of each of the Operational Defendants' alleged ownership and/or operations on the Church property.  (*See supra* n.4.)  The Amended Complaint also refers to two letters in support of Plaintiffs' fraud claim:

• **<u>Kinder Morgan letter</u>**:  Plaintiffs allege that on February 3, 2012, Kinder Morgan "acting through El Paso Corporation (prior to their merger)" sent a letter to the Oklahoma Department of Environmental Quality ("ODEQ") ("Kinder Morgan letter").  (Am. Compl. ¶ 25; *see* Kinder Morgan Partial Mot. to Dismiss, Docs. 81-82, Ex. 2.)  The letter is signed by senior counsel on behalf of the Trustee for the EPEC Oil Company Liquidating Trust. The letter explains a series of mergers and transactions beginning with Wilcox Oil Company and ultimately resulting in the creation of a liquidating trust.  The letter states that the trustee for the EPEC Oil Company liquidating trust was only authorized to resolve claims if asserted on or before December 18, 2008, and that because that date had passed, the trustee was not

authorized to participate in investigation or remediation of the site where the Wilcox refinery was located.

- **Marathon letter**:  Plaintiffs allege that on September 12, 2014, Marathon Oil sent a letter to the U.S. Environmental Protection Agency denying that Marathon had any information tying it to the property and denying liability for the pollution ("Marathon letter").[7]

Plaintiffs allege that "Plaintiffs do not know what, if any, affirmative representations were made by the Operational Defendants with respect to the contamination they created," other than the Kinder Morgan letter and Marathon letter.  (*Id.* ¶ 25.)

Plaintiffs contend a "relaxed" fraud pleading standard is called for when a claim of fraud is based on an omission, rather than an act; when a corporation exclusively possesses facts supporting the allegation of fraud; and when the alleged fraud is "part of a complex scheme occurring over a long period of time."  (Pls.' Resp. to Operational Defs.' Partial Mots. to Dismiss 15 (citing *U.S. ex rel. Ellis v. Sheikh*, 583 F. Supp. 2d 434, 439 (W.D.N.Y. 2008)).)  While relying on cases from other jurisdictions regarding the pleading requirements of Rule 9(b), Plaintiffs ignore relevant case law within the Tenth Circuit.   In the Tenth Circuit, while "allegations of fraud may be based on information and belief when the facts in question are peculiarly within the opposing party's knowledge," a plaintiff still must "set[] forth the factual basis for the plaintiff's belief."  *Koch*, 203 F.3d at 1237 (citing *Scheidt v. Klein*, 956 F.2d 963 (10th Cir. 1992)).  Even where the pleading requirements of Rule 9(b) are relaxed, "this exception 'must not be mistaken for license to base claims of fraud on speculation and conclusory allegations.'"  *U.S. ex rel. Schwarz v. Coastal*

---

[7]  Marathon Defendants contend Plaintiffs' description of the Marathon letter is inaccurate. Marathon Defendants also contend the letter is not from the named Marathon Defendants, but rather from "a lawyer employed by Marathon Oil Company" (Marathon Defs.' Partial Mot. to Dismiss 4 & n.6 (citing Am. Compl. ¶ 25)), and that the letter therefore cannot be a material representation by Marathon Defendants.

*Healthcare Group, Inc.*, 2000 U.S. App. LEXIS 26914, at *10 (10th Cir. 2000) (quoting *Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997)).  For example, the court in *Koch* held that Plaintiffs failed to meet Rule 9(b) requirements where they "broadly alleged that the Defendants concealed the true value of KII stock without informing the court or the Defendants of the source for this contention."  *Koch*, 203 F.3d at 1237.

Plaintiffs allege in general terms that the Operational Defendants concealed or withheld information about pollution from refinery operations and structured or restructured entities within their respective organizations in order to avoid liability.  However, the Amended Complaint does not inform the Operational Defendants or the Court of the factual basis for Plaintiffs' belief.  Plaintiffs' new allegations regarding the Kinder Morgan letter and Marathon letter do not cure this deficiency.  Plaintiffs fail to allege that any representations in the letters are false, or that Plaintiffs took any action in reliance on the letters' contents or suffered injury as a result of statements in the letters.  Nor do the letters provide a factual basis to establish that the Operational Defendants committed any fraud by structuring or restructuring entities within their organizations.  Plaintiffs have pleaded no facts to establish that any transactions involved false representations or omissions upon which Plaintiffs relied.  Finally, to the extent Plaintiffs' fraud claim is based on material omissions, Plaintiffs have failed to allege any factual basis for their information and belief about such omissions.  The Amended Complaint therefore does not provide the Operational Defendants with fair notice of Plaintiffs' fraud claim and the factual ground upon which it is based.  *See Koch*, 203 F.3d at 1236.  Nor do the letters establish, beyond general and conclusory allegations, that the Operational Defendants owed any duty of disclosure to Plaintiffs or that they misstated or failed to disclose any fact to Plaintiffs, which would be required to support a constructive fraud claim.  Plaintiffs' fraud and constructive fraud claims therefore are dismissed as to all Operational Defendants.

### D.     Other Challenged Claims

The Operational Defendants contend the Amended Complaint fails to allege sufficient facts demonstrating personal harm to any Plaintiff and also contend Plaintiffs lack standing to seek recovery of damages on behalf of the Church parishioners and staff.  However, these arguments relate to allegations that were first made in Plaintiffs' original Petition and are not new to the Amended Complaint.  Accordingly, the Operational Defendants' motion to dismiss these claims is denied as untimely.  *See* Fed. R. Civ. P. 12(g); *see also Spratt v. Leinster*, No. 06-CV-01526-WDM-KLM, 2007 WL 2412826, at *1 (D. Colo. Aug. 21, 2007) (noting that "[a]lthough grounds not asserted in the initial motion are not necessarily waived . . . they cannot be made in a successive Rule 12 motion unless they were unavailable at the time of the first") (internal citations omitted); *SEC v. Lucent*, No. 04-CV-2315(WHW), 2006 WL 2168789, at *5-*6 (D.N.J. June 20, 2006) (unpublished) (noting that "[t]he filing of an amended complaint will not revive the right to present by motion defenses that were available but were not asserted in a timely fashion prior to amendment of the pleading[.]" (citing 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1388 (3d. ed. 2012))).

## V.     Conclusion

BP's Motion to Reconsider (Doc. 76) is DENIED.

BP's Motion to Strike Portions of the Amended Complaint (Doc. 78) and Kinder Morgan's Motion to Strike Portions of the Amended Complaint (Doc. 80) are DENIED in part and GRANTED in part, as follows:

(1)     Re-assertion of claims against Non-Operational Defendants - GRANTED;

(2)     Re-assertion of private nuisance claim - DENIED; and

(3)     Declaratory Judgment/Contribution/Indemnity claim - GRANTED as to Non-Operational Defendants; DENIED as to Operational Defendants.

BP's Partial Motion to Dismiss (Doc. 79), Kinder Morgan's Partial Motion to Dismiss (Doc. 81), and Marathon Defendants' Partial Motion to Dismiss (Doc. 83) are DENIED in part and GRANTED in part, as follows:

(1)     Negligence per se - GRANTED, claim dismissed as to all Operational Defendants;

(2)     Strict liability - DENIED;

(3)     Fraud - GRANTED, claim dismissed as to all Operational Defendants;

(4)     Personal Damages - DENIED; and

(5)     Claims on behalf of Church parishioners and staff - DENIED.

**IT IS SO ORDERED this 21st day of July, 2017.**

**TERENCE KERN**
**United States District Judge**