IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| BRISTOW FIRST ASSEMBLY OF GOD, *et al.*, | ) ) |
| Plaintiffs, | ) ) |
| v. | ) Case No. 15-CV-523-TCK -FHM ) |
| BP p.l.c.; MARATHON OIL CORPORATION; MARATHON PETROLEUM CORPORATION; KINDER MORGAN, INC., *et. al*, | ) ) ) ) ) |
| Defendants. | ) ) |

## OPINION AND ORDER

Before the Court is Defendant Kinder Morgan Inc.'s Motion to Disqualify Plaintiffs' Counsel Durbin Larimore & Bialick ("DLB") and for Discovery. (Doc. 178) and Plaintiff's Application for Leave to File Sur-Reply (Doc. 190). Both motions are opposed.

### Motion to Disqualify Plaintiffs' Counsel (Doc. 178)

**I. Factual Background**

Plaintiff Bristow First Assembly of God (the "Church"), an Oklahoma nonprofit organization, owns real property in Creek County, Oklahoma (the "Church property"). The Church's pastor, Plaintiff Mark S. Evans, his wife Christina J. Evans and their children, C.J.E. and B.K.E., lived on the Church property until they allegedly were advised by the Department of Environmental Quality that continuing to do so could jeopardize their health and safety. On June 24, 2015, Plaintiffs filed a Petition in the District Court of Creek County, Oklahoma, alleging, *inter alia*, claims of negligence, nuisance, trespass, fraud and strict liability. On September 14,

2015, Defendant Kinder Morgan removed the case to this Court pursuant to 28 U.S.C. §1332(a) on the basis of diversity jurisdiction. (Doc. 2). Subsequently, the Court denied a Motion to Remand filed by plaintiffs, granted in part defendant BP's Motion to Dismiss and gave Plaintiffs leave to file an amended complaint. (Doc. 66).

The Amended Complaint asserts claims for negligence, negligence per se, public nuisance, private nuisance, unjust enrichment, strict liability, fraud/deceit, restitution, declaratory judgment, injunction and fees and costs. (Doc. 68). Discovery in the case is underway, with a cutoff date of June 24, 2019. (Doc. 205).

The Church property—also known as the Wilcox Site—is part of a former refinery site in Bristow. Refinery operations on the Church property ceased approximately 80 years ago. Since 1994, the Wilcox Site has been the subject of governmental investigation by the Oklahoma Department of Environmental Quality ("ODEQ") and the United States Environmental Protection Agency ("EPA"). In 2013, the Wilcox Site was added to the National Priorities List established under the Comprehensive Environmental Responsibility, Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9001 *et seq*.

The El Paso Corporation ("El Paso") has been a wholly-owned subsidiary of Kinder Morgan since May 2012. El Paso first learned of the Wilcox Site in late 2011, when it received a letter from ODEQ stating that the Wilcox Oil Company had operated a crude oil refinery at the site from the 1920s to the early 1960s; Wilcox Oil Company had merged with Tenneco Oil Company in 1965; and El Paso Energy Corporation acquired Tenneco Oil Company in 1996. (Doc. 178-1). ODEQ requested El Paso to discuss with it the possibility of entering into a Voluntary Cleanup or Brownfields program to address environmental contamination at the site. *Id.*

In November 2011, El Paso retained Mr. Kearney, then a partner at the GableGotwals firm, to investigate ODEQ's allegations. Mr. Kearney represented El Paso during a December 14, 2011, meeting with ODEQ, and subsequently worked with two other GableGotwals attorneys to investigate and prepare a response to ODEC's claims. In a February 3, 2013, letter drafted by the GableGotwals attorneys and signed by Scott J. Miller, Senior Counsel at El Paso, the company declined to participate in the remediation of the Wilcox Site. (Doc. 178-2).[1]

Plaintiffs are represented in this case by three law firms: DLB, Devore & Jorgenson, PLC, and Michael J. Blaschke, P.C. Kinder Morgan recently learned that Mr. Kearney, now a partner at DLB, participated in the legal work performed for El Paso by GableGotwals, and sent Plaintiffs' counsel a letter identifying the alleged conflict of interest and demanding that all three firms withdraw. The firms declined to do so. On May 1, 2018, Kinder-Morgan filed its Motion to Disqualify Plaintiffs' Counsel Durbin Larimore & Bialick and for Discovery.[2] The same day, Kinder-Morgan filed a Motion to Stay Discovery Pending Resolution of Motion to Disqualify and for Discovery. (Doc. 179). The Court denied the Motion to Stay Discovery on August 10, 2018. (Doc. 202).

---

[1] The letter explained that Wilcox Oil Company had owned and operated the refinery until November 1963, and was subsequently merged into Tenneco Oil Company in the 1960s. (Doc. 178-2 at 1). Tenneco was renamed as EPEC Oil Company in the mid-1990s, and was dissolved on December 18, 1998. *Id.* As part of the dissolution process, EPEC Oil Company created the EPEC Oil Company Liquidating Trust on March 9, 2001. Pursuant to the trust agreement, the trustee for the liquidating trust was authorized to resolve claims asserted against EPEC Oil Company so long as such claims were asserted on or before December 18, 2008—the so-called "Claims Assertion Date" in the trust agreement. *Id.* at 1-2. The Liquidating Trust claimed that by December 15, 1994, ODEQ had noted in one of its own reports that Tenneco Oil Company was a successor-by-merger to Wilcox Oil Company and that Tenneco still had operations in Oklahoma. *Id.* at 2.

[2] On April 25, 2018, Mr. Kearney filed a Motion to Withdraw as Counsel of Record for Plaintiffs. (Doc. 175). The Court granted the motion on April 27, 2018. (Doc. 177).

## II. Applicable Standards

### A. General Standard Governing Motions to Disqualify

"[T]he control of attorneys' conduct in trial litigation is within the supervisory powers of the trial judge, and is thus a matter of judicial discretion." *Cole v. Ruidoso Municipal Schools*, 43 F.3d 1873, 1383 (10th Cir. 1994) (citation omitted). In exercising its discretion and determining whether to grant a motion to disqualify, the court must look to two sources of authority. *Id.* "First, attorneys are bound by the local rules of the [federal] court in which they appear." *Id.* As noted by the Tenth Circuit, "[f]ederal district courts usually adopt the Rules of Professional Conduct of the states where they are situated." *Id.* The Northern District of Oklahoma has adopted the Oklahoma Rules of Professional Conduct ("ORPC") as the standard governing attorney conduct. *See* N.D. Okla. LCvR 83.6(b). Therefore, one source of law that the Court must consult is the Oklahoma Rules of Professional Conduct.

Additionally, "because motions to disqualify counsel in federal proceedings are substantive motions affecting the rights of the parties, they are decided by applying standards developed under federal law." *Cole*, 43 F.3d at 1383 (*see also United Sates v. Stiger*, 413 F.3d 1185, 1195 (10th Cir. 2005) (same)). Under Tenth Circuit law, "motions to disqualify are governed by the ethical rules announced by national profession and considered in light of the public interest and the litigants' rights." *Cole*, 43 F.3d at 1383 (emphasis added). Thus, although federal courts must consult state rules of professional conduct, they are not bound by state-court interpretations of such rules. *See Weeks v. Indep. Sch. Dist. No. I-89 of Okla. County*, 230 F.3d 1201, 1214 (10th Cir. 2000) (Briscoe, J., concurring) (explaining that neither the district court nor the Tenth Circuit was bound by the Oklahoma Supreme Court's interpretation of ORPC 4.2 because "ethical rules in federal court are subject to a national standard."). Nonetheless, Judge Briscoe advised that "it

4

would arguably create procedural difficulties for practitioners in Oklahoma were we to adopt an interpretation of Rule 4.2 different from that adopted by the Oklahoma Supreme Court." *Id.* Accordingly, the Court's task is to "apply[ ] standards developed under federal law," *Cole*, 43 F.3d at 1383, while attempting to avoid any inconsistencies with state law that would "create procedural difficulties for practitioners in Oklahoma." *See Weeks v. Indep. Sch. Dist. No. I-89 of Okla Cnty.*, 230 F.3d 1201, 1214 (10th Cir. 2000).

Kinder Morgan asserts that the disqualification of DLB is required based on Sections 1.9(a) and 1.10(a) of the Oklahoma Rules of Professional Responsibility ("ORPC"), and applicable Tenth Circuit law.

**B. ORPC 1.9(a) and 1.10(a)**

ORPC 1.9(a) provides:

A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.

Okla. Stat. tit. 5, Ch. 1 , App.3-A, Rule 1.9.

ORPC 1.10(a) states:

While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 1.7 or 1.9, unless the prohibition is based on a personal interest of the prohibited lawyer and does not represent a significant risk of materially limiting the representation of the client by the remaining lawyers in the firm.

*Id.* at Ch. 1, App.3-A, Rule 1.10.[3] By its language, any ORPC 1.10(a) imputation analysis begins with an analysis of ORPC Rule 1.9.

---

[3] ORPC 1.10(a) is based on the former ABA Model Rule of Professional Conduct. On February 16, 2009, the model rule was amended to provide:

5

**C. Tenth Circuit Standard**

Under Tenth Circuit law, a party seeking to disqualify opposing counsel pursuant to ORPC 1.9(a) must establish that "(1) an actual attorney-client relationship existed between the moving party and the opposing counsel; (2) the present litigation involves a matter that is 'substantially related' to the subject of the movant's prior representation; and (3) the interests of the opposing counsel's present client are materially adverse to the movant." *United States v. Stiger,* 413 F.3d 1185, 1196 (10th Cir. 2005) (internal citation omitted). If the movant establishes the first two prongs, "an irrebuttable presumption arises that a client has indeed

---

> (a) While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 1.7 or 1.9, unless
>
> * * *
>
> (2) the prohibition is based on Rule 1.9(a) or (b) and arises out of the disqualified lawyer's association with a prior firm, and
>
>> (i) The disqualified lawyer is timely screened from any participation in the matter and is apportioned no part of the fee therefrom; (ii) written notice is promptly given to any affected former client to enable the former client to ascertain compliance with the provisions of his Rule, which shall include a description of the screening procedures employed; a statement of the firm's and of the screened lawyer's compliance with these Rules; a statement that review may be available before a tribunal; and an agreement by the firm to respond promptly to any written inquiries or objections by the former client about the screening procedures; and (iii) certifications of compliance with these Rules and with the screening procedures are provided to the former client by the screened lawyer and by a partner of the firm, at reasonable intervals upon the former client's written request and upon termination of the screening procedures.

Model Rules of Prof'l Conduct R. 1.10, cited in AGA House of Delegates, Resolution 109 (February 16, 2009); *see Southwire Co. v. Ramallo Bros. Printing, Inc.*, No. 03-100, 2010 WL 446593, at *1 (D.P.R. Feb. 1, 2010) (explaining hat Model Rule 1.10(a) was mended "to explicitly allow the use of screening procedures to avoid the imputation of conflicts of interest in the private-firm context"). Thus, the Oklahoma rule arguably conflicts with the current "national standard."

revealed facts to the attorney that require his disqualification." *Id.* (internal citation omitted). This irrebuttable presumption is consistent with the Comment to the most recent version of ORPC 1.9, which took effect January 1, 2008:

> A former client is not required to reveal the confidential information learned by the lawyer in order to establish a substantial risk that the lawyer has confidential information to use in the subsequent matter. A conclusion about the possession of such information may be based on the nature of the services the lawyer provided the former client and information that would in ordinary practice be learned by a lawyer providing such services.

Okla. Stat. tit. 5, Ch.1, App. 3-A, Rule 1.9, Cmt. 3.

Accordingly, Kinder Morgan need not come forward with evidence of the actual confidential information revealed to Mr. Kearney during his work leading up El Paso's February 3, 2012, letter declining to participate in the remediation of the Wilcox Site. Instead, the Court may conclude that these attorneys have confidential information if Kinder Morgan demonstrates that (1) an actual attorney-client relationship existed; and (2) this case involves a matter that is substantially related to Mr. Kearney's prior representation of El Paso.[4] Matters are "substantially related" for purposes of the Rule if they involve the same transaction or legal dispute or if there otherwise is a substantial risk that confidential factual information as would normally have been obtained in the prior representation would materially advance the client's position in the subsequent matter. *Id.*

---

[4] The Court has previously rejected the argument that the Oklahoma Supreme Court's decision in *Arkansas Valley State Bank v. Phillips*, 171 P.3d 899 (Okla. 2007), mandates a more stringent evidentiary showing. *See Accounting Principals, Inc. v. Manpower, Inc.*, 599 F. Supp.2d 1287, 1293-95 (N.D. Okla. 2008). For the same reasons set forth in that opinion, the Court rejects any contention by DBL that Kinder Morgan must disclose the precise nature of the confidential information disclosed to Plaintiffs.

**III. Analysis**

    **A. ORPC 1.9(a) Analysis**

It is undisputed that in 2011 and 2012, Mr. Kearney, then a partner at Gable Gotwals, had an attorney/client relationship with El Paso, and that El Paso subsequently became a Kinder Morgan subsidiary in May of 2012. Nor is there any question that the interests of Kinder Morgan are materially adverse to the plaintiffs' interest. However, Plaintiffs assert the remaining requirement—that the two matters are "substantially related"—is not satisfied because only ODEQ and El Paso were involved in the earlier matter and the only defense relied upon by El Paso in rejecting ODEQ's claim was that ODEQ failed to assert any claims against the EPEC Oil Company Liquidating Trust within the 10-year "claims assertion date." (Doc. 183 at 24). They argue that since Kinder-Morgan has not asserted the Trust as a defense to liability, no conflict of interest exists.

The Court is not persuaded by Plaintiffs' constricted view of the nature and scope of the relationship between the two cases. Both matters involve the alleged contamination of the Wilcox site by the former Wilcox Company, which merged with Tenneco Oil Company in 1965. El Paso is the successor to Tenneco and Kinder-Morgan acquired El Paso in May 2012. The Complaint in this case specifically references ODEC's earlier attempt to persuade El Paso to participate in remediation of the Wilcox site and El Paso's rejection of that request based on the existence of the Trust—the very matters Mr. Kearney handled on behalf of El Paso. (Doc. 68, ¶ 25).[5] Plaintiffs are now pursuing, *inter alia*, damages and injunctive relief, based on the same alleged contamination.

---

[5] Indeed, the discovery requests leading to Kinder Morgan's realization that Mr. Kearney had previously represented El Paso were focused on the earlier interaction between ODEC and El Paso.

(Doc. 68, ¶¶ 5, 25-26). Accordingly, it is beyond question that the interests of Mr. Kearney's current clients—the plaintiffs in this case—are materially adverse to Kinder Morgan.

Therefore, the Court concludes that Kinder Morgan has met its burden under ORPC 1.9(a) of showing that (1) an actual attorney-client relationship existed between the moving party and the opposing counsel, (2) the present litigation involves a matter that is "substantially related" to the subject of the movant's prior representation and (3) there is a "substantial risk" that the confidential factual information obtained by Mr. Kearney in the 2011-2012 ODEC matter would materially advance Plaintiffs' position in this case.

**B. ORPC 1.10(a) Analysis**

Mr. Kearney is no longer counsel of record in this case. Accordingly, the next question is whether his disqualification is imputed to DLB pursuant to ORPC 1.10(a). As explained *supra*, note 3, the Oklahoma rule and model rule appear to be in conflict. The Court need not resolve this conflict because DLB is disqualified under either the Oklahoma or national version. Under Oklahoma's version of Rule 1.10(a), Mr. Kearney's conflict is imputed to his entire firm *unless* the prohibition is based on a personal interest of the prohibited lawyer and does not represent a significant risk of materially limiting the representation of the client by the remaining lawyers in the firm. No such showing has been made. Thus, ORPC 1.10(a) imputes Mr. Kearney's conflict to DLB.

Under the model version of Rule 1.10(a), if the conflict was created at a attorney's prior firm, the disqualified attorney's new firm may nonetheless represent the client if the following three conditions are met:

> (i) the disqualified lawyer is timely screened from any participation in the matter and is apportioned no part of the fee therefrom;

9

(ii) written notice is promptly given to any affected former client to enable the former client to ascertain compliance with the provisions of this Rule, which shall include a description of the screening procedures employer; a statement of the firm's and of the screened lawyer's compliance with these Rules; a statement that review may be available before a tribunal; and an agreement by the firm to respond promptly to any written inquiries or objections by the former client about the screening procedures; and

(iii) certifications of compliance with these Rules and with the screening procedures are provided to the former client by the screened lawyer and by a partner of the firm, at reasonable intervals upon the former client's written request and upon termination of the screening procedures.

Model Rules of Prof'l Conduct R. 1.10(a).

Here, however, no argument has been or can be made that any of the elements of Rule 1.10(a) have been met.

**C. Plaintiffs' Waiver Argument**

Plaintiffs assert that Kindle Morgan's delay of more than a year after commencement of the case before seeking disqualification of Mr. Kearney and the DLB firm constitutes a waiver of its right to seek disqualification of the firm. However, as the Court has previously stated, "[t]his argument is not consistent with law or the professional rules and would place an undue burden on former clients to know every member of a law firm upon that firm's entry of appearance." *Leslie v. Fielden*, 2011 WL 1655969 at *6 (N.D. Okla. May 2, 2011)

More importantly, Mr. Kearney never raised the issue with Kinder Morgan, and Kinder Morgan was not aware of the conflict until after Plaintiffs filed their March 6, 2018, Motion to Compel (Doc. 172). In that motion, Plaintiffs asked the court to require Kinder Morgan to undertake targeted searches of its electronic files to identify, *inter alia*, "individuals that Scott Miller worked with and/or conferred with about ODEQ contacting El Paso/Kinder Morgan in 2011-2012, and . . . individuals who participated in or with knowledge of the ODEQ and the EPA's investigation into El Paso/Kinder Morgan as a potentially responsible party for the contamination

and pollution of the Bristow site and related communications." *Id.* at 10. The Motion to Compel was signed by Mr. Kearney. *Id.* at 29.

Kinder Morgan began those targeted searches soon after receiving Plaintiffs' Motion to Compel. (Doc. 178-13, Certification of P. Leigh Bausinger, Esq. in Support of Defendant Kinder Morgan's Motion to Disqualify Plaintiffs' Counsel Durbin Larimore & Bialick and for Discovery, ¶ 13). Kinder Morgan's collection of those electronic files yielded more than 12,000 documents. *Id.,* ¶ 14. Documents related to the ODEQ letter to El Paso, and El Paso's response to ODEQ, were found among those files. *Id.*, ¶¶ 15-19. As counsel for Kinder Morgan were reviewing the documents, Plaintiffs filed their Reply in Support of the Motion to Compel on April 10, 2018 at 4:37 pm EDT. *Id.*, ¶ 20. Ms.Bausinger states: "In a moment of sudden realization, triggered by the fact that we were at the same time in the midst of a review of a document population in which an attorney named David L. Kearney represented El Paso and its affiliates with respect to the Wilcox Site, . . . [we] identified the potential conflict of interest issue." *Id.*, ¶ 22. By matching OBA identification numbers, the attorneys confirmed that Mr. Kearney was the same person who had represented El Paso Corporation with respect to the Wilcox Site in 2011-2012. *Id.*, ¶¶ 23-24.

Three days later, on April 13, 2018, counsel for Kinder Morgan sent Plaintiffs' counsel a letter identifying the conflict and asking that all of Plaintiffs' counsel withdraw from representation of Plaintiffs in the pending cases. (Doc. 178-6).[6]

Based on these facts, the Court concludes that Kinder Morgan timely exercised its right to assert a conflict, and no waiver occurred.

---

[6]At the commencement of this litigation, the GableGotwals firm approached Kinder Morgan and requested a waiver of conflict to represent codefendant BP, p.l.c. Kinder Morgan refused to agree to a waiver of conflict. Its position with respect to Mr. Kearney's and DLB's representation is consistent with its earlier refusal to grant a request for waiver by GableGotwals.

**IV. Kinder Morgan's Request for Discovery from Plaintiffs' Co-Counsel**

The Tenth Circuit has held that as a general rule, "a co-counsel relationship will not alone warrant disqualification." *Smith v. Whatcott*, 774 F.2d 1032, 1034 (10th Cir. 1985). Kinder Morgan does not dispute this, but seeks leave to conduct discovery from Mr. Kearney and DLB's co-counsel, the Devore Law Firm, PLC, and Michael J. Blaschke, P.C., "to ascertain whether Mr. Kearney 'might have consciously or unconsciously transmitted some confidence to the previously untainted firm.'" (Doc. 186 at 11) (quoting *Fund of Funds, Ltd. v. Arthur Andersen & Co.*, 567 F.2d 225, 234 (2d Cir. 1977).

Mr. Kearney has submitted an affidavit stating, *inter alia*, that:

- Upon joining DLB in July of 2016, he had no memory of his involvement with El Paso in its responses to the ODEC inquiry in late 2011 and early 2012, nor did he recall any confidential or privileged information gained from the matter or any other matter where he represented El Paso.

- To date, he does not specifically recall any substantive issues, facts, theories, involvement or participation in the DEQ response matter with El Paso; the only specific details he knows on the DEQ response matter are from Kinder Morgan's withdrawal request; and he has no independent recollection of confidential, privileged or property information from his participation in the DEQ response.

- He has not shared or disseminated any confidential, privileged or proprietary information with any lawyer representing plaintiffs in this matter.

(Doc. 183-1, Kearney Affid. ¶¶13, 20, 22-25).

Additionally, Plaintiffs' co-counsel Allan DeVore, Jandra Cox and Michael J. Blaschke have each submitted affidavits stating that:

- They had no knowledge of Mr. Kearney's involvement in El Paso's response to the DEQ's 2011 request until reading Kinder Morgan's withdrawal request letter of April 13, 2018;

- Mr. Kearney has not disclosed to them, nor do they have knowledge of,any confidential, privileged or proprietary information regarding El Paso, Kinder Morgan or the DEQ response matter;

12

- Except the information that Kinder Morgan/El Paso has publicly revealed, they have not reviewed any files, notes, records, documents, data, e-mails or other written or electronic information regarding Gable-Gotwals' work for El Paso or any other matters Mr. Kearney worked on while at GableGotwals, because they were not aware of his work at that firm.

(Docs. 183-11, 183-12, 183-13).

Kinder Morgan takes the position that these affidavits do not obviate the need for discovery "concerning the nature of Mr. Kearney's interaction with the other attorneys in this case," including "whether there was a joint prosecution agreement or whether Mr. Kearney ever engaged in discussions with co-counsel on Plaintiffs' liability case against Kinder Morgan." (Doc. 186 at 10-11). The Court disagrees. Both Mr. Kearney and the principals of the co-counsel firms have attested that Mr. Kearney never shared any confidential information concerning El Paso or Kinder Morgan, and because the firms are independent from DLB, Mr. Kearney's knowledge cannot be imputed to them. *Smith*, 774 F.3d at 1034.

Accordingly, Kinder Morgan's request for leave to conduct discovery of the co-counsel firms is denied.

### Plaintiffs' Application to File Sur-Reply

Plaintiffs, pursuant to LCVR7.2, moved for leave to file a Sur-Reply to address Kinder Morgan's argument, in its Reply, that the affidavits of Plaintiffs' counsel were insufficient and contained merely conclusory statements.[7] (Doc. 190). The Court's denial of Kinder Morgan's request for leave to conduct additional discovery has rendered Plaintiffs' Application moot.

---

[7] Plaintiffs also alleged, for the first time, that Kinder Morgan lacked standing to raise the conflict issue unless KM and El Paso "are the same company." (Doc. 190, n. 1). Because plaintiffs failed to raise this issue in their Response, the Court will not consider it.

**Conclusion**

Defendant Kinder Morgan's Motion to Disqualify Plaintiffs' Counsel Durbin Larimore & Bialick and for Discovery (Doc. 178) is granted in part and denied in part. The firm of Durbin Larimore & Bialick is disqualified from serving as counsel for Plaintiffs. However, Kinder Morgan's request for leave to conduct discovery regarding the relationship between David L.Kearney and plaintiffs' co-counsel Devore & Jorgenson, PLC and Michael Blaschke, P.C. is denied. Plaintiffs' Application to File Sur-Reply (Doc. 190) is denied as moot.

ENTERED this 11th day of October, 2018.

_____
**TERENCE C. KERN**
**UNITED STATES DISTRICT JUDGE**